UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

```
_____
                                   )
United States of America           )
                                   )
     v.                            )    Cr. No. 09-100 S
                                   )
Dennis Liriano.                    )
                                   )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

On June 13 and 14, 2011, Defendant Dennis Liriano was tried before a jury on a single-count indictment charging conspiracy to possess with the intent to distribute a schedule 1 controlled substance, Benzylpiperzine (BZP), in violation of 21 U.S.C. § 846. Liriano now moves for a judgment of acquittal pursuant to Fed. R. Crim. P. 29(c), or in the alternative, for a new trial pursuant to Fed. R. Crim. P. 33(b)(2). For the reasons set forth herein, the motion is denied.

I.  Background[1]

The facts are gleaned from those presented at trial and in the light most favorable to the verdict. United States v. Reeder, 170 F.3d 93, 102 (1st Cir. 1999).

---

[1] Liriano was first tried on this indictment in May 2011. The trial resulted in a hung jury, and the Court declared a mistrial on May 6, 2011. The case was retried in June 2011.

On June 17, 2009, at approximately 10:30 p.m., United States border patrol agents recognized Xavier Robert's automobile as one suspected of being used to smuggle drugs into the United States. They were about forty miles east of the Akwesasne Indian Reservation, which straddles New York and Canada. The Akwesasne Reservation is well known to be unpatrolled by United States Customs and Border Protection, and people are known to smuggle a variety of black market and "grey market" goods, such as drugs and counterfeit products, through the area.

Law enforcement stopped Robert's car and found two large hockey bags containing approximately fifty pounds of marijuana. They also discovered a smaller gym bag holding approximately twenty-seven pounds of BZP. The agents arrested Robert. The agents searched Robert's car incident to arrest and found receipts suggesting Robert had been on the Akwesasne Reservation earlier that evening.

Thereafter, the agents recruited Robert to aid them in their investigation. Robert agreed to cooperate and to conduct a controlled delivery. The agents brought Robert to a motel room that he had rented a few days earlier in Plattsburgh, New York, and waited for Robert to receive contact from his

handlers.[2]  While the agents and Robert were in the motel, Robert received communications from the handlers.

Early the next morning, Robert received a telephone call from one of the French-speaking men.  In a series of telephone calls, of which the jury heard recordings, the handlers instructed Robert to deliver the smaller bag of contraband to Rhode Island.

While these phone calls continued between Robert and his handlers, the agents and Robert left the motel and flew to Rhode Island.  There, Robert received a text message instructing him to contact a telephone number with a 401 (Rhode Island) area code.  As instructed, Robert called the number and asked for "Henry."  "Henry," whose voice the jury reasonably could have determined was that of Defendant Liriano,[3] said it was a wrong number.  Between calls an agent identified as Agent Robert Charles told Xavier Robert, "After you say all that, you say yeah I've got a package of candy for you."  Robert confirmed

---

[2] The term "handlers" is used in this opinion to identify the two French-speaking men who directed Robert's drug activities over the course of these events.

[3] Agent William O'Neill testified at trial that he had interviewed Liriano twice over the course of several hours.  He stated that he had become familiar with Liriano's voice and that he had separately reviewed the recordings of the telephone and in-person conversations between Robert and "Henry."  Agent O'Neill further testified that he had identified the voice of the man on the recordings as Defendant Dennis Liriano.  Thus, the jury reasonably could have found that the voice on the recordings was that of Liriano.

with one of the handlers that it was the correct telephone number and called the 401 number again. Robert asked Liriano, "Are you supposed to see a guy today? To get some candy?" Liriano responded with an enthused, "Ah! Okay, okay, okay, okay." Robert and Liriano arranged to meet at 266 Adelaide Avenue in Providence, Rhode Island. Robert then called back one of the handlers and told him of the arrangements. Upon the agents' insistence, Robert made additional calls to Liriano and the handlers, and he changed the meeting place to the Walgreen's Pharmacy parking lot on Elmwood Avenue in Providence.

When Liriano and Robert met in the parking lot, Liriano voiced concerns about the presence of surveillance cameras in the parking lot, people watching them, and Robert's New York license plates. He tried to convince Robert to return with him to his house. At this point, the agents moved in and arrested both Liriano and Robert.

At the time of his arrest, the agents found a wallet on Liriano's person that held, among other things, two business cards tying him to the drug deal. One was a business card for a motel located on the Akwesasne Reservation, and the other was for a body shop located in Montreal, Canada (the city from which Robert hailed). Liriano was also carrying a cellular telephone associated with the 401 telephone number that Robert had called. Detective Timothy Grant testified that he had done a forensic

examination on the telephone and had located three incoming calls from Robert's cellular telephone and three outgoing calls to Robert's telephone. Each call was made on the relevant day, within the relevant timeframe.

At the end of evidence, the jury heard arguments from counsel, deliberated, and returned a guilty verdict against Liriano on the single-count indictment.

Additional facts are presented below as they relate to the analysis.

II. Analysis

On a Rule 29 motion for judgment of acquittal, the Court views the evidence as a whole and in the light most favorable to the government. Reeder, 170 F.3d at 102. In so doing, the Court determines "whether a rational trier of facts could have found guilt beyond a reasonable doubt." Id. "Credibility issues must be resolved in favor of the verdict." United States v. Rivera Calderon, 578 F.3d 78, 88 (1st Cir. 2009) (quoting United States v. Perez-Ruiz, 353 F.3d 1, 7 (1st Cir. 2003).

The Court may grant a new trial when "the interest of justice so requires." Fed. R. Crim. P. 33. When deciding a motion for a new trial, the Court considers the evidence presented at trial but remains mindful that "the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates

heavily against the verdict." United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010) (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)).

The Court addresses Liriano's arguments in turn.

A. Sufficiency of the Evidence[4]

Liriano first argues that there was insufficient evidence to support the jury's guilty verdict. Specifically, he argues that the evidence did not support a finding that there was an agreement to possess a schedule 1 substance, or even of knowledge of wrongdoing.

To support a conviction for a narcotics conspiracy, "the government must prove, beyond a reasonable doubt, that an agreement existed to commit the underlying substantive offense, and that the defendant elected to join the agreement, intending that the underlying offense be committed." United States v. Paret-Ruiz, 567 F.3d 1, 5 (1st Cir. 2009) (quoting United States v. Gomez-Rosario, 418 F.3d 90, 105 (1st Cir. 2005) (internal quotation omitted)). Such an agreement need not be express, but

---

[4] While this information is not relevant to the instant motion, a curious reader may be wondering why the government did not put Robert on the stand. During Liriano's May 2011 trial, Robert informed the Court, in open court but outside the presence of the jury, that he would refuse to testify in this matter, despite the fact that he had been granted immunity. (See Trial Tr. 163-73, May 4, 2011, ECF No. 116.) After explaining the serious consequences of his decision, the Court held Robert in civil contempt. (Id. at 172-73.) This trial ended in a mistrial and in the re-trial, the government decided not to attempt to call Robert.

6

may be a tacit agreement proven by circumstantial evidence. Id. at 6; see also United States v. Concemi, 957 F.2d 942, 950 (1st Cir. 1992) ("[A]n agreement . . . may be inferred from a development and collocation of circumstances.") (internal citation and quotation marks omitted). Moreover, a "conspiracy conviction requires that a defendant's 'membership in the conspiracy be proved on the basis of his own words and actions (not on the basis of mere association or knowledge of wrongdoing).'" United States v. Richardson, 225 F.3d 46, 53 (1st Cir. 2000) (quoting United States v. Cintolo, 818 F.2d 980, 1003 (1st Cir. 1987)). But the conspiracy need not be successful, nor the underlying offense even be attempted, for the conviction to stand. United States v. Nelson-Rodriguez, 319 F.3d 12, 29 (1st Cir. 2003).

While this is a relatively close case, the evidence sufficiently establishes that three men (Liriano and the two French-speaking men) conspired to possess with the intent to distribute a schedule 1 controlled substance.[5] The content and

---

[5] To prove a § 841 conspiracy, the government is required "to prove only that the offense 'involved' a particular type and quantity of drug, not that the defendant knew that he was distributing that particular drug type and quantity." United States v. Collazo-Aponte, 281 F.3d 320, 326 (1st Cir. 2002) (citing United States v. Sheppard, 219 F.3d 766, 768 n.2, 770 (8th Cir. 2000)) (emphasis in original). Therefore, the government did not need to prove that Liriano knew he was agreeing to possess BZP, only that he was agreeing to possess with intent to distribute a schedule 1 controlled substance.

7

timing of the conversations between Robert and Liriano and between Robert and his handlers, including Liriano's enthused response to the word "candy"; Liriano's nervous behavior in the Walgreen's parking lot; and the business cards tying Liriano to the Akwesasne Reservation and Montreal, all together form a sufficient basis on which the jury reasonably could have concluded that Liriano had an agreement with Robert's handlers to possess a quantity of narcotics larger than one would possess for personal consumption.

It is true that, as Liriano argues, the conversations between Robert, acting as a government agent, and the unknown French-speaking men do not directly prove the conspiracy Liriano was convicted of joining; but they do constitute valuable circumstantial evidence. Together with the direct evidence of Liriano's actions and statements, the conversations are strong circumstantial evidence that Liriano and the French-speaking men conspired to possess with the intent to distribute a schedule 1 controlled substance.[6] For these reasons, Liriano's argument based on the sufficiency of the evidence fails.

---

[6] This fact distinguishes the instant case from Paret-Ruiz, 567 F.3d 1, 8 (1st Cir. 2009), relied on by Liriano. In Paret-Ruiz, there was insufficient evidence showing that the defendant had an agreement with anyone other than the undercover government agent. Id. at 8; see also id. at 6 (stating that a defendant cannot, as a matter of law, enter into a conspiracy with a government agent). Unlike in Paret-Ruiz, here, there is sufficient evidence upon which the jury reasonably could

8

B. Improper Introduction of New Fact and Vouching for a Witness

Liriano next contends that he is entitled to a new trial because the government's rebuttal improperly introduced a new fact to the jury and amounted to impermissible vouching for a witness. He argues that there was no evidence presented at trial that the word "candy" had any specific meaning to Liriano or that the agent whose voice was overheard on the recording was an experienced narcotics investigator. Liriano did not make a contemporaneous objection; he did, however, move for a mistrial at the close of arguments.

In the government's closing argument, the prosecutor opened by saying the following:

> "I am the guy you are supposed to see today. I am the guy with the candy. Okay. Okay. Okay." Your job as jurors in this case is to determine whether or not there's sufficient evidence to establish that this Defendant, Dennis Liriano, knew that "candy" meant illegal drugs.

(Trial Tr. 2:1-6, June 14, 2011, ECF No. 127.)

Thereafter, in Liriano's summation, defense counsel made the following statement:

> You've got the transcripts. You listen to the tape. And [in] that second telephone call Xavier Robert says, You want some candy? I'm paraphrasing it. I'll stand by what the transcript says. But if you look at the call immediately before that, you will see at the

---

conclude that Liriano also had entered into an agreement with the French-speaking men to possess with intent to deliver the schedule 1 narcotics.

9

>       very end, . . . that the word "candy" is introduced
>       into this case by an agent.  It's not something Xavier
>       Robert came up with.  It's blood in the water for a
>       shark.  It's bait.  That's what Dennis Liriano . . .
>       jumped at.

(Id. at 20:22-21:8.)

The prosecutor delivered the following response during his rebuttal:

>       [Defense counsel] says, you don't know what the
>       candy is.  You don't know what the candy is.  Candy
>       could be gray market goods. . . . No.  Folks, "candy"
>       was a code word.  [Defense counsel] says, Look at the
>       transcript.  The agent introduced the word "candy."
>
>       Of course I also, please, encourage you, look at
>       that portion of the transcript where the agent says,
>       Tell him you've got candy.  These are veteran customs
>       agents who have conducted countless numbers of drug
>       investigations.  Isn't it reasonable to infer from the
>       evidence that they know what the buzz words are in the
>       drug trade?  Of course it is.  It's only reasonable to
>       conclude this is a phrase used in the drug trade.  And
>       it certainly hooked this Defendant, didn't it?  "I'm
>       the guy with the candy.  Okay.  Okay.  Okay."

(Id. at 29:19-30:12.)

Within the context of his argument, it is clear that the prosecutor asked the jury to infer from the evidence that "candy" meant illicit drugs; he did not state that there was direct evidence supporting this conclusion. It is entirely appropriate for jurors to make such inferences based on their real-world experiences. See United States v. Rosa-Carino, 615 F.3d 75, 80 (1st Cir. 2010) ("It is hardly surprising that drug conspirators never explicitly spelled out what they were doing

in conversation. A reasonable jury could have concluded that [defendant] knew and intended to participate in a drug delivery."). Indeed, defense counsel's statement during his closing that the word "candy" was "blood in the water for a shark. It's bait. That's what Dennis Liriano . . . jumped at" was an invitation in itself for the jury to conclude that "candy" was a buzz word.

In addition, the prosecutor's comments did not constitute improper vouching. Improper vouching occurs when the prosecutor imparts his or her "personal belief in a witness's veracity or impl[ies] that the jury should credit the prosecution's evidence simply because the government can be trusted." United States v. Wilkerson, 411 F.3d 1, 8 (1st Cir. 2005) (quoting United States v. Perez-Ruiz, 353 F.3d 1, 9 (1st Cir. 2003)). Prosecutors are given greater leeway in rebuttal arguments when they are responding to comparable statements made by defense counsel. United States v. Ayala-Garcia, 574 F.3d 5, 18 (1st Cir. 2009); United States v. Cresta, 825 F.2d 538, 556 (1st Cir. 1987).

Here, the prosecutor clearly did not engage in improper vouching. The agent who introduced the word "candy" was not a witness at trial, and the prosecutor never used his position as a government attorney or the witnesses' positions as government witnesses to persuade the jury. The prosecutor also never expressed his own opinions on the evidence.

Whether Liriano is entitled to a new trial because the prosecutor introduced a fact not in evidence is a harder question. A look back at the recordings reveals that it was Agent Charles who introduced the word "candy." Agent Charles was not a witness at trial, and there was no evidence presented of his experience as a narcotics investigator. However, Agent Quakenbush did testify that Agent Charles was his partner and that Quakenbush (who was present for each of the phone calls) had substantial experience conducting drug investigations. There is a question, then, as to whether the prosecutor introduced a new fact when he asked the jury to "look at that portion of the transcript where the agent says, Tell him you've got candy. These are veteran customs agents who have conducted countless numbers of drug investigations." (Trial Tr. 30, June 14, 2011.) Arguably the prosecutor commented generally on the combined experience of the customs agents; however, because Agent Charles alone introduced the word "candy," the jury likely believed that this was a statement about Agent Charles's experience. For purposes of discussion, the Court assumes the prosecutor introduced this new fact to the jury.

Prosecutorial misconduct does not "suggest deliberate wrongdoing but rather . . . a statement of fact that is mistaken or unsupported by any evidence." United States v. Gentles, 619 F.3d 75, 81 (1st Cir. 2010) (quoting United States v. Azubike,

504 F.3d 30, 38 (1st Cir. 2007)); see also 3 Charles Alan Wright & Sarah N. Welling, Federal Practice and Procedure § 588 (4th ed. 2011) ("It is misconduct for a prosecutor to make an assertion to the jury of a fact, either by way of argument or by an assumption in a question, unless there is evidence of that fact."). To determine whether prosecutorial misconduct resulted in prejudice, "the test is whether the prosecutor's misconduct so poisoned the well that the trial's outcome was likely affected, thus warranting a new trial." Gentles, 619 F.3d at 81. The Court looks to three factors: (1) "whether the prosecutor's conduct was isolated and/or deliberate"; (2) "whether the trial court gave a strong and explicit cautionary instruction"; and (3) "whether it is likely that any prejudice surviving the instruction could have affected the outcome of the case." Id. at 81-82.

First, the prosecutor's conduct was isolated and clearly was not deliberate. His single comment was a response to defense counsel's suggestion that the agent had introduced the word "candy," and while arguably only Agent Charles's experience was relevant here, he couched it in terms of the agents' (plural) experience. Second, the Court did give a cautionary instruction that the attorneys' statements were not evidence and should not be considered as such, and that if anything said by an attorney as to the evidence does not conform to the jury's

13

memory, it is their memory that controls.  Third, while this was a close case, the Court does not believe that any prejudice surviving the instruction affected the outcome.  Therefore, even if the prosecutor introduced a new fact into evidence in his rebuttal statement, it did not so prejudice Liriano so as to warrant a new trial.

    C.    Government's Alleged Attack on Defense Counsel's Credibility

The prosecutor began his rebuttal as follows:

> [Defense counsel] has one of the greatest reputations in the state as a criminal defense attorney.  He is a veteran litigator and a man that many of us who practice law here in Rhode Island look up to.  He would never intentionally mislead you in any way, shape or form as to what the state of the evidence is or what issues you need to focus on.
>
> Sometimes in our enthusiasm as advocates, we kind of miss the ball and we get ahead of ourselves.  In this particular case, with the crime that's been charged here, the crime of conspiracy, and please take a look at the instructions again if there's any question in your mind as to what the elements of that offense are, it's absolutely totally irrelevant as to whether or not there were even drugs in the trunk of the car.
>
>    . . . .
>
> Now, the evidence does show, I would suggest to you, and you may recall this testimony, that the agents dumped out the BZP into some other containers and they went out and they purchased over-the-counter drugs about the same size and color, you might recall that, as the BZP.  They threw some random samplings of the BZP in the bag and the bag went in the trunk of the car.  You'll recall that testimony.

14

(Trial Tr. 26:19-27:9; id. at 27:17-24, June 14, 2011.) Liriano argues that the first two paragraphs of this excerpt amounted to an attack on defense counsel's credibility that undermined Liriano's right to effective assistance of counsel. Again, Defendant did not register a contemporaneous objection at trial.

Prosecutors are prohibited from placing the credibility of counsel in issue. United States v. Joyner, 191 F.3d 47, 55 (1st Cir. 1999). While the prosecutor in Joyner had bolstered her own credibility, see id., a logical extension of this statement of law is that prosecutors also should not make unwarranted attacks on defense counsel's candor.

In isolation, the prosecutor's comment may have bordered on improper. The prosecutor did not outright state that defense counsel had misled the jury, but it arguably was implied by his fulsome praise. However, in light of the fact that the government was responding to defense counsel's misstatement of the evidence, the context of the statement, and the Court's curative jury instructions, the Court concludes that the statements were clearly not "sufficiently prejudicial to warrant a new trial under the circumstances." United States v. Rosales, 19 F.3d 763, 767 (1st Cir. 1994).

First, the statement at issue was made in response to defense counsel's misstatement of the evidence during argument.[7] While the prosecutor could have omitted the fulsome praise, it certainly was reasonable for him to correct defense counsel and draw the jury's attention to the misstatement. Indeed, the prosecutor's statement could be taken as a conveyance to the jury that he meant only to correct the evidence, and <u>not</u> to personally attack defense counsel. Second, contrary to Defendant's argument, and as the excerpt demonstrates, after the prosecutor made the statement at issue, he went on to explain that it was irrelevant under the law of conspiracy whether the drugs were actually in the trunk and that one of the officers had testified that drugs were in fact present in the trunk.[8]

---

[7] Defense counsel, in his closing argument made the following misstatement:

> If these pills were in a zipped up bag -- and I interject that your memory controls this. I don't think there's any direct evidence in this case that the bag was even in the trunk of that Ford Focus. There was a lot of talk of how they went out and rented a Ford Focus and flew everybody down here, but I don't recall either Special Agent Holloran or Special Agent O'Neill, former Special Agent O'Neill[,] testifying that the bag was actually in the trunk of that car. But your memory controls that. By comparison, it's a small point.

(Trial Tr. 21:13-23.) In fact, there had been testimony that the bag was in the trunk.

[8] Defendant also argues that this comment was problematic because it immediately preceded the prosecutor's argument

16

Third, the Court gave an instruction to the effect that the arguments and comments of counsel are not evidence and the jury should not consider them as evidence. Accordingly, the Court concludes that the prosecutor's argument did not amount to prejudicial prosecutorial misconduct, and Liriano was not thereby deprived of his right to effective assistance of counsel.

III. Conclusion

For the foregoing reasons, Defendant's motion for judgment of acquittal, or in the alternative, for a new trial, is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
United States District Judge
William E. Smith
Date: September 22, 2011

---

concerning the word "candy." The transcript shows that the discussion of the word "candy" comes a full two pages after the praising of the defense counsel.